Lucian Todor
3832 E. Sabra Ln
Gilbert, AZ 85296
773-677-9022

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
Phoenix Division

LUCIAN TODOR,

    *Plaintiff,*

v.

COMPUTER SCIENCES CORPORATION,
1775 Tysons Blvd.
Tysons, VA 22102,

Serve Registered Agent:

  CT Corporation System
  3800 N. Central Ave, Suite 460
  Phoenix, AZ 85012

    *Defendant.*

Civil Action No. **CV-17-04704-PHX-ESW**

## CIVIL COMPLAINT FOR EQUITABLE AND MONETARY RELIEF AND DEMAND FOR JURY

### INTRODUCTION

Plaintiff Lucian Todor brings this civil complaint of unlawful retaliation, discrimination, and interference in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615, *et seq.*, against Defendant Computer Sciences Corporation ("CSC").

### PARTIES

1. Plaintiff Lucian Todor is a citizen of the United States and is domiciled in Gilbert, Arizona.

2. Defendant CSC is a Delaware corporation that has a principal place of business in McLean Virginia.

1

3. On April 1, 2017, CSC became a wholly-owned subsidiary of DXC Technology Company.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is an action arising under the laws of the United States, specifically the FMLA.

5. This Court has personal jurisdiction over Defendant CSC because it has regular contacts with Arizona and regularly transacts business in this judicial district.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the unlawful employment practices occurred within this judicial district, which was the primary location of Plaintiff's employment with Defendant CSC.

## FACTUAL ALLEGATIONS

7. Todor worked for CSC from March 2008 through January 2010, and again from July 2010 through December 2015. In his most recent role, Todor worked as a recruiting advisor, essentially managing the recruitment of new employees for certain departments.

8. Starting in August 2015, Todor worked remotely from his home in Gilbert, Arizona (prior to that he worked remotely from Lake Barrington, Illinois). Todor's supervisor, Americas Recruiting Manager Sally Byrnes, worked from the Philadelphia, Pennsylvania area.

9. CSC issued Todor average ratings on his performance evaluations.

10. From on or about November 6, 2015, through on or about November 13, 2015, Todor took personal leave due to a respiratory condition. Todor's serious medical condition made it difficult for him to verbally communicate.

11.     Todor's primary care physician, Dr. Richard Miller, completed an FMLA form for this leave; Todor submitted this form to CSC. On or about December 2, 2015, CSC approved Todor's November 6-16, 2015 leave as approved FMLA leave.

12.     On or about November 16, 2015, Todor returned to work.

13.     On or about November 30, 2015, Todor took leave again for different serious medical conditions, including sciatica and related spinal pain.

14.     On or about December 2, 2015, Todor sent an e-mail to Byrnes reporting that he had a letter from his doctor that provided details about his sciatica and his need for medical leave. Todor advised Byrnes that if he needed to complete FMLA paperwork, Todor would provide the requisite medical leave materials. Todor also reported to Byrnes that he was on three types of medication, one of which caused him to be unconscious.

15.     On or about December 8, 2015, Todor sent an e-mail to Byrnes notifying her that he was still out on leave due to his sciatica and that he would visit with a physical therapist the next day and obtain more information about his condition.

16.     Also on or about December 8, 2015, Todor sent an e-mail to Gail Kinter in CSC human resources notifying her that he was out on medical leave due to his sciatica and that he would likely be out until early next week. Todor told Kinter that he would obtain a revised doctor's note advising on his serious medical condition.

17.     On or about December 11, 2015, Todor submitted a doctor's note to Kinter. Todor also advised Kinter that he tried to record his leave as sick leave but was unable to do so in CSC's time recording system system, so he entered it as "vacation FML leave" and asked for ideas on how to enter his medical leave.

18. On or about December 12, 2015, Todor was rushed to the emergency room due to extreme pain related to his sciatica, and he was admitted to the hospital for two nights, through or about December 14, 2015.

19. On or about December 15, 2015, Todor notified Byrnes of his hospital stay and serious medical condition.

20. On or about December 15, 2015, Kinter requested an FMLA health care provider form from Todor related to his recent leave (beginning on November 30, 2015). Kinter provided Todor a three-day deadline, through December 18, 2015, to submit the documentation. Prior to December 15, 2015, Todor was unaware that CSC was requesting an FMLA health care provider form.

21. On or about December 17, 2015, Todor provided to Kinter a doctor's note which declared that Todor was under the doctor's care through December 15, 2015. Todor also reported to Kinter that he was rushed to the emergency room over the weekend, that he did not know how long he would continue to be on leave, and that he was taking strong pain medication. Kinter replied by advising Todor that she needed paperwork placing him out of work past December 15, 2015, and discharge paperwork from the hospital. Kinter also asked for the FMLA health care provider form by the next day, and she advised that if he did not provide the materials requested on the timeline she provide that she would deny Todor's FMLA request.

22. Todor promptly responded to Kinter by e-mail and explained, in detail, all the medical care he received up to that point. Todor also attached the hospital discharge forms to his e-mail. Todor complained to Kinter that Byrnes was harassing him about his medical condition.

23. On or about December 21, 2015, CSC sent Todor a letter stating that on November 30, 2015, he was notified that he was eligible to take FMLA leave and to complete

and return documentation to certify the absence. The letter stated that CSC had not yet received the required documentation to approve the absence as FMLA leave and therefore his absence was not considered FMLA leave.

24. In response, on December 21, 2015, Todor sent an e-mail to Kinter reporting the following:

> Gail,
>
> I left you a voicemail and wanted to followup [sic] with an email. I am confused by this response. I sent you 2 letters from my doctor stating that I am under his care. When we spoke on the phone in the past you said that I can send either a letter stating that I am under his care or the CSC letter about my condition. According to my doctor's medical manager, typically my doctor does not fill out any forms unless the patient has undergone surgery so that is why I sent you both of the letters stating that I am under his care.
>
> Did you get those emails? I can resend if needed.
>
> In addition I sent you information that I was in the hospital as well. As I explained last week, I am meeting with my doctor tomorrow and discuss the results of my MRI and next steps.
>
> Can you please give me a call to discuss at 773-677-9022?
>
> Lucian

25. Todor sent another e-mail to Kinter a few minutes later reporting that he was going to obtain a form from his doctor declaring that he was still under his physician's care.

26. On or about December 23, 2015, Todor sent an e-mail to Kinter providing a detailed update on his medical condition. Todor also advised Kinter that he had explained to his doctor's medical assistant that he needed the FMLA documentation completed and that the medical assistant committed to having it completed the next afternoon. Todor also sent an e-mail to Byrnes updating her on his condition.

27. On or about December 24, 2015, Dr. Ejovi Ughwanogho sent Kinter a completed FMLA healthcare provider certification for Todor. The certification declared that

5

Todor was incapacitated due to his serious health condition starting on November 26, 2015, and continuing through a date to be determined during Todor's next visit. Dr. Ughwanogho sent this document by facsimile transmission directly to Kinter.

28. Thereafter, on December 24, 2015, Byrnes notified Todor of a conference call set for December 28, 2015. However, CSC did not notify Todor that his doctor's December 24, 2015 submission was in any way incomplete or insufficient.

29. On or about December 28, 2015, CSC terminated Todor despite CSC's policies allowing for 30 days of job protected leave even if an employee does not meet FMLA eligibility requirements.

## COUNT I
### Family Medical Leave Act, 29 U.S.C. § 2615, *et seq.*
### Discrimination/Retaliation

30. Todor incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

31. CSC is an employer as defined by 29 U.S.C. § 2611(4)(A).

32. Todor is an employee as defined by 29 U.S.C. § 2611(2)(A).

33. Todor had a right under the FMLA to take twelve (12) work weeks of leave during any twelve (12) month period for a serious health condition. 29 U.S.C. § 2612(a)(1)(D).

34. Todor engaged in protected activity under the FMLA from November 13-15, 2015, Todor exercised his right under the FMLA to take leave.

35. Todor again engaged in protected activity under the FMLA beginning on November 30, 2015, when he took leave for his sciatica and continually told CSC's human resources department and his supervisor of his intent to take leave for his medical condition.

Todor also continually provided updates on his medical conditions as well as documentation to support his medical condition.

36. Todor also engaged on protected activity on December 24, 2015, when Todor's doctor submitted the completed FMLA healthcare provider certification form to human resources. The certification stated that Todor was incapacitated due to his serious health condition starting on November 26, 2015, through a date to be determined during Todor's next visit.

37. Todor suffered an adverse action on December 28, 2015, when CSC terminated his employment.

38. CSC retaliated and discriminated against Todor by terminating his employment in response to Todor exercising his rights under the FMLA.

39. CSC's stated and forthcoming reasons for terminating Todor are pretext for unlawful discrimination.

40. Todor has been damaged as a result of the unlawful acts of CSC.

41. Accordingly, Todor demands such legal or equitable relief as will effectuate the purposes of the FMLA, including, but not limited to economic damages, liquidated damages, reasonable attorney's fees and costs, pre-judgment interest, and any other relief that this Court deems just and equitable.

## COUNT II
**Family Medical Leave Act, 29 U.S.C. § 2615, *et seq.*
Interference**

42. Todor hereby incorporates all allegations set forth in all the foregoing paragraphs as though fully alleged herein.

43. CSC is an employer as defined by 29 U.S.C. § 2611(4)(A).

44. Todor is an employee as defined by 29 U.S.C. § 2611(2)(A).

45. Todor had a right under the FMLA to take twelve (12) work weeks of leave during any twelve (12) month period for a serious health condition. 29 U.S.C. § 2612(a)(1)(D).

46. It is unlawful for an employer to discharge or discriminate against an individual because an individual has given, or is about to give, any information with any inquiry or proceeding relating to his or her FMLA rights. 29 U.S.C. § 2615(b).

47. Todor engaged in protected activity beginning on November 30, 2015 when Todor took leave for his sciatica and continually told the human resources department and his supervisor of his intent to take leave for his medical condition. Todor also continually provided updates on his medical conditions as well as documentation to support his medical condition.

48. CSC unlawfully interfered with Todor's leave when on December 21, 2015, CSC notified Todor that his leave starting on November 30, 2015, was not considered FMLA leave.

49. Todor again notified CSC of his intention take leave when on December 24, 2015, Todor's doctor submitted the completed FMLA healthcare provider certification form to human resources. The form indicated that Todor would need to be on leave for an undetermined time due to his medical condition.

50. CSC did not notify Todor that his doctor's December 24, 2015 submission was in any way incomplete or insufficient.

51. Todor suffered an adverse action when on December 28, 2015, CSC terminated Todor.

52. CSC denied Todor a benefit, FMLA leave, to which he was entitled to under the FMLA, and Todor has been damaged as a result of the unlawful acts of CSC.

53.     Accordingly, Todor demands such legal or equitable relief as will effectuate the purposes of the FMLA, including, but not limited to economic damages, liquidated damages, reasonable attorney's fees and costs, pre-judgment interest, and any other relief that this Court deems just and equitable.

## PRAYER FOR RELIEF

Based on the foregoing, Todor respectfully requests that the Court enter judgment in his favor and award to him the following relief:

a. Legal and equitable relief, including reinstatement;

b. Economic damages;

c. Liquidated damages;

d. Attorney's fees and costs;

e. Pre-judgment interest; and

f. Any other relief that this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff Lucian Todor demands a trial by jury for any and all issues proper to be so tried.

Respectfully submitted,

_/s/ Lucian Todor_
Lucian Todor
*Pro Se* Plaintiff
3832 E. Sabra Lane
Gilbert, AZ  85296
lucian009@protonmail.com